IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JERRIES SOUSOU and VIOLETTE SUSU,

    Plaintiffs,

  v.

BAYVIEW LOAN SERVICING, LLC, *et al.*,

    Defendants.

No. C 18-00135 WHA

**ORDER DENYING TEMPORARY RESTRAINING ORDER**

## INTRODUCTION

Plaintiffs filed an emergency application for a restraining order to halt an impending foreclosure sale on their property. For the reasons stated herein, plaintiffs' application is **DENIED**.

## STATEMENT

In 2005, *pro se* plaintiffs Violette Susu and Jerries Sousou took out a $1,612,500 home loan from America's Wholesale Lender, evidenced by a promissory note and secured by a deed of trust on real property located in Dublin, California. The recorded deed identified MERS as the beneficiary and nominee, and provided that MERS could assign the deed to another party as beneficiary (Compl., Exh. 1).

In 2008, MERS recorded a substitution of trustee naming Recontrust Company, N.A. as trustee of the deed. Defendant Bayview Loan Servicing, LLC serviced the mortgage loan, which plaintiffs stopped paying in July 2010 (Compl., Exh. 3-D; Dkt. No. 11-1, Exh. A).

In 2011, MERS assigned the note and all beneficial interest under the deed to defendant The Bank of New York Mellon as trustee for the Certificateholders of CWALT, Inc.,

Alternative Loan Trust 2005-82. In 2017, BNY Mellon executed a substitution of trustee naming Zieve, Brodnax & Steele, LLP as trustee under the deed. Zieve later recorded a notice of default and notice of trustee's sale, which sale was subsequently continued to January 18, 2018 (Compl., Exhs. 3-C, 3-E; Dkt. No. 11-2, Exhs. B–C; Dkt. No. 6 ¶ 10).

In October 2017, plaintiffs filed a *pro se* complaint against five defendants (including the defendants to this action), which complaint asserted eighteen claims for relief. Defendants moved to dismiss that complaint under FRCP 12(b)(6). After plaintiffs failed to meet the deadline to respond to the motions to dismiss, plaintiffs received two extensions of time to file a response. Rather than respond, on December 8 plaintiffs moved to voluntarily dismiss their case, stating that due to their full-time employment they lacked sufficient time to maintain the action.

Plaintiffs commenced the current action on January 8, again naming Bayview and BNY Mellon as defendants. Plaintiffs' claims include: (1) wrongful foreclosure; (2) violations of the Fair Debt Consumer Protection Act; (3) violations of the Truth-in-Lending Act; (4) slander of title; (5) intentional infliction of emotional distress; and (6) declaratory relief.

Plaintiffs filed the instant application for a temporary restraining order on January 16. They argued that there is a likelihood of success on the merits of their claims and that they will suffer irreparable injury if their residence is foreclosed upon. Defendants filed an opposition to the application on January 17, and a hearing on the TRO was held the following day. An order set a supplemental briefing schedule and a further hearing on plaintiffs' application for February 1, until which time defendants agreed to postpone the foreclosure sale of plaintiffs' property (Dkt. Nos. 6, 9, 11, 14).

On January 31 — the eve of the scheduled hearing on plaintiffs' TRO — plaintiffs gave notice that they had initiated proceedings in bankruptcy court. Although the hearing on plaintiffs' TRO was held the following morning, plaintiffs failed to attend. An order thereafter stayed this action pending resolution of the parallel bankruptcy court proceedings. On February 20, defendants filed a notice explaining that the bankruptcy action was dismissed for plaintiffs' failure to comply with an order of the bankruptcy court. The temporary stay was accordingly

2

lifted (Dkt. Nos. 16–19). The Court has determined that a further hearing would not be of assistance in resolving this motion.[1]

**ANALYSIS**

A plaintiff seeking a preliminary injunction must show that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008). In balancing these factors, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2010).

**1. PLAINTIFFS HAVE NOT RAISED "SERIOUS QUESTIONS" REGARDING THE CLAIMS IN THEIR COMPLAINT.**

Plaintiffs have not offered legal arguments and evidence in support of their request for a temporary restraining order that raise even serious questions going to the merits. *First,* plaintiffs' wrongful foreclosure, slander of title, intentional infliction of emotion distress, and declaratory judgment claims appear to rest on the theory that the deed of trust held by MERS became invalid when the promissory note was securitized and sold to BNY Mellon. Our court of appeals has limited foreclosure claims based on the "separation of the note" theory to times where the note and deed were "irreparably split." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1043–44 (9th Cir. 2011). That decision rejected the plaintiff's argument that the foreclosure on a home loan tracked in the MERS system was "wrongful" because the system split the deed from the note, explaining that such a split "only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the

---

[1] In opposing the application, defendants seek judicial notice of four public records: (1) the deed of trust, (2) the assignment of the deed of trust; (3) the notice of default, and (4) the notice of trustee's sale. All of these documents were recorded in the Official Records of Alameda County (Dkt. Nos. 11-2, 15-1). Accordingly, each is a public record, the authenticity of which is capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned. *See Wolf v. Wells Fargo Bank, N.A.*, No. C 11-01337 WHA, 2011 WL 4831208, at *2 (N.D. Cal. Oct. 12, 2011). Plaintiffs do not oppose these requests. Defendants' requests for judicial notice are **GRANTED**.

3

lenders." Here, plaintiffs fail to make clear if and how the note and deed of trust were irreparably split, or why defendants were not acting as agents of the lender.

To the extent that plaintiffs contend that the assignment and substitutions of trustee were unauthorized, the terms of the deed of trust explicitly permitted such transfers. The deed named MERS as beneficiary and nominee for America's Wholesale Lender and America's Wholesale Lender's successors and assigns, and further stated that MERS had the right "to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender." The deed further stated that the promissory note, or a "partial interest" in the note, together with the deed of trust could "be sold one or more times without prior notice to [plaintiffs]." This contractual agreement permitted MERS to assign all beneficial interest under the deed of trust to the CWALT Trust. Nothing in the complaint or plaintiffs' application shows that MERS lacked the authority to assign beneficial interest in the deed.

In turn, BNY Mellon, acting on behalf of beneficiary CWALT Trust, had the authority to substitute Zieve as trustee. *See, e.g.*, *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 334 (2008) ("The beneficiary may make a substitution of trustee . . . to conduct the foreclosure and sale."). The trustee holds a power of sale. If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale. *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 926 (2016). Zieve, as a properly substituted trustee, therefore had the authority to start the foreclosure process by recording the notice of default and notice of trustee's sale.

Finally, to the extent plaintiffs' claims are also premised on the theory that the assignment of their loan to the securitization trust is void because it was tardy under the terms of the trust's pooling and servicing agreement, plaintiffs lack standing to make such a challenge because they were not a party to the agreement. Our court of appeals recently confirmed that defaulting borrows cannot enjoin a pending foreclosure due to the tardy assignment of their mortgage into a securitization trust because such an assignment is merely voidable, not void. *In re Turner*, 859 F. 3d 1145, 1149 (9th Cir. 2017). *Turner* follows decisions from the California

4

Courts of Appeal similarly holding that such an assignment is merely voidable and therefore does not confer standing on borrowers. *Saterbak v. JP Morgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 815 (2016); *see also Mendoza v. JP Morgan Chase Bank, N.A.*, 6 Cal. App. 5th 802 (2016).

*Second*, plaintiffs fail to raise "serious questions" going to the merits of their Fair Debt Collection Practices Act claim. The FDCPA subjects "debt collectors" to civil damages for engaging in certain abusive practices while attempting to collect debts. *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2016) (citing 15 U.S.C. §§ 1692d–f, 1692k). Our court of appeals recently made clear, however, that "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA." *Id.* at 572. "Because the money collected from a trustee's sale is not money owed by a consumer, it isn't 'debt' as defined by the FDCPA." *Ibid.*

*Third,* plaintiffs' claim under the Truth-in-Lending Act is time-barred. The Act "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beech v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Section 1641(g) requires new creditors or assignees of mortgage loans to notify the borrow, in writing, of such transfer or assignment "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned." A lender who fails to satisfy TILA's requirements may be subject to "statutory and actual damages [that are] traceable to a lender's failure to make the requisite disclosures." *Beech*, 523 U.S. at 412.

Plaintiffs contend that BNY Mellon violated this provision by failing to notify plaintiffs that their mortgage loan was sold in 2011 (Compl. ¶ 40). Defendants do not dispute that they failed to send plaintiffs the required notice. Rather, they argue that plaintiffs' claim is time-barred and therefore cannot succeed on the merits.

Section 1640(e) provides that "[a]ny action under this section may be brought within one year from the date of the occurrence of the violation." Although this limitations period

5

"runs from the date of consummation of the transaction," the doctrine of equitable tolling "may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986).

The sale of plaintiffs' loan occurred in December 2011. Plaintiffs allege in their verified complaint, however, that they were unaware of the assignment until after they began preparing a defense to the notice of default recorded in 2017, at which time plaintiffs initiated a records search in the Alameda County Recorder's Office. Through such allegations, plaintiffs appear to argue that equitable tolling of the statute of limitations is proper.

Our court of appeals addressed this very issue in *McQuinn v. Bank of America, N.A.*, 656 Fed. App'x 848 (9th Cir. 2016), albeit in a non-binding decision. There, the plaintiffs argued that the defendants' failure to notify them of the transfer of their mortgage loan prevented them from discovering the facts underlying their TILA claim within the limitations period. *Id.* at 849. Our court of appeals stressed that "[e]quitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Ibid. McQuinn* did not present, however, "the kind of extraordinary circumstances contemplated by our equitable tolling jurisprudence." *Id.* at 850. Because California law provides that "[a]ny assignment of a mortgage and any assignment of the beneficial interest under a deed of trust may be recorded, and from the time the same is filed for record operates as constructive notice of the contents thereof to all persons," the plaintiffs were on constructive notice of the transfer and could not establish they were "unable to obtain vital information bearing on the existence of the claim." *Ibid.* Moreover, because the transfer was publicly recorded, the plaintiffs had a reasonable opportunity to discover the underlying facts of the TILA violation within the limitations period. *Ibid.* So too here.

Importantly, the transfer of plaintiffs loan to BNY Mellon was recorded in January 2012, yet plaintiffs failed to file the instant action until January 2018, nearly five years after the sale. Plaintiffs have failed to put forth any evidence (or even allege) that defendants engaged in

6

misconduct which prevented plaintiffs from filing a claim on time. This order accordingly finds that plaintiffs' TILA claim is time-barred.

## CONCLUSION

For the foregoing reasons, the application for a temporary restraining order is **DENIED**. This order need not be based on the fact that plaintiffs have lived in the house without paying anything to anyone for over seven years.

**IT IS SO ORDERED.**

Dated: February 22, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE